Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | William J. Hibbler | Sitting Judge if Other than Assigned Judge | Amy J. St. Eve |
|---|---|---|---|
| CASE NUMBER | 99 C 593 | DATE | 03/06/2003 |
| CASE TITLE | Robinson v. McAdory | | |

MOTION: [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

Petition for a Writ of *Habeas Corpus* (doc. # 1)

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing [held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference [held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial [set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs [by/agreement/pursuant to]
    ☐ FRCP4(m)   ☐ General Rule 21   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] . Enter memorandum opinion and order. For the attached reasons, the Petitioner's request for a writ of *habeas corpus* (doc. #1 ) is DENIED and the case is dismissed.

(11) ☐ [For further detail see order on the reverse side of the original minute order.]

| | | | |
|---|---|---|---|
| | No notices required, advised in open court. | | Document Number |
| | No notices required. | number of notices | |
| | Notices mailed by judge's staff. | | |
| | Notified counsel by telephone. | MAR - 7 2003 date docketed | |
| ✓ | Docketing to mail notices. | | 29 |
| ✓ | Mail AO 450 form. | IS docketing deputy initials | |
| | Copy to judge/magistrate judge. | | |
| JHC courtroom deputy's initials | | 03 MAR -6 PM 5:59 date mailed notice | |
| | | Date/time received in central Clerk's Office  mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

UNITED STATES OF AMERICA, EX REL.
WESLEY ROBINSON,

    Petitioner,

v.

EUGENE MCADORY, Warden[1]

    Respondent.

No. 99 C 0593

Judge William J. Hibbler

DOCKETED
MAR - 7 2003

## MEMORANDUM OPINION AND ORDER

Petitioner Wesley Robinson filed a *habeas corpus* petition, 28 U.S.C. § 2254, claiming that he was denied due process when the prosecution failed to disclose a witness until the second day of trial and when the prosecutor misstated the evidence in closing arguments. Robinson further alleges that he was denied effective assistance of counsel. Robinson also raises a number of claims that are not cognizable in a petition for *habeas corpus*. For the following reasons, Robinson's petition is DENIED.

### I. Factual Background

Robinson does not challenge the statement of facts set forth in the Illinois Supreme Court opinion affirming the judgment of the trial court, and those facts are thus presumed correct for purposes of this Court's review. *Mahaffey v. Schomig*, 294 F.3d 907, 915 (7th Cir.

---

[1] Eugene McAdory is currently the Warden at the Menard Correctional Center and is thus the proper respondent in this *habeas* action. *See* Rule 2(a) of the Rules Governing Habeas Corpus Cases under 28 U.S.C. § 2254. This Court hereby substitutes McAdory as the respondent. *See* Fed. R. Civ. P. 25(d)(1).

1



2002); 28 U.S.C. § 2254(e)(1). The underlying facts are set forth by the Illinois Supreme Court in *People v. Robinson*, 157 Ill. 2d 68, 623 N.E.2d 352 (1993), and need not be repeated fully here.

According to the State, Robinson, while serving a sentence for another crime, murdered Stateville Correctional Center employee Suon Troeng during an attempt to rob Troeng of several cartons of cigarettes. Troeng was murdered near the prison's commisary, which was discovered in a state of disarray, with plastic bags and cigarette cartons strewn about the room. Troeng died from a severe head injury due to blunt-force trauma, and prison officials found an iron bar with his blood at the scene of the crime.

The State's case against Robinson was built entirely on circumstantial evidence: several witnesses testified that they saw Robinson in the area of the crime, acting suspiciously (running away, hiding near a wall, and dropping contraband, including a plastic bag filled with loose cartons of cigarettes and keys to the commissary); a partial shoe impression that matched the boots worn by Robinson was found inside the prison commissary; Robinson's fingerprints were found on two separate plastic bags inside the commissary; an expert in forensic serology testified that blood found on Robinson's jumpsuit and pants could have originated from Troeng, but not from Robinson; and blood found on gloves in Robinson's possession also could have originated from Troeng, but not from Robinson.

During the second day of trial, defense counsel orally moved to exclude the testimony of correctional officer Elton Lawler, or, in the alternative, for a mistrial on the

2

basis that the State had violated discovery requirements. Defense counsel noted that he had just received a copy of Lawler's report, which was dated nearly a year after the crime. Lawler's report indicated that he was the first person to search the defendant following his arrest and found, among other things, two pairs of gloves on the defendant — which undermined counsel's theory that Robinson was merely an innocent passerby who got blood on his clothes trying to help Troeng. Defense counsel argued to the trial court that the late disclosure of Lawler's report was unduly prejudicial because prior to the surfacing of this report, no evidence linked the defendant to the gloves. The prosecutor responded to defense counsel's objection by noting that he first learned that Lawler found the gloves in Robinson's possession when reconstructing the chain of custody for the gloves approximately two weeks earlier. The trial court denied defendant's motion and allowed Lawler to testify. On cross-examination, Lawler explained that he had filed a report shortly after searching Robinson and finding the gloves, but that he had received a call shortly before trial asking him to file a second report because the prosecution could not find his original report in the case file.

Robinson testified in his own defense, and he persisted in his theory that he was merely an innocent passerby who happened upon Troeng after the crime had occurred. According to Robinson, he stumbled across the injured Troeng while on his way to the prison dining room to report for his work assignment. Robinson claimed to have seen some plastic bags, key, a hat, and some "stingers" (metal coils used to heat water) near Troeng. Robinson claimed that Troeng was not seriously injured, but that he was bleeding

3

from his mouth. Robinson further testified that he did not want to be blamed for Troeng's injuries, so he quickly left the scene, picking up a plastic bag and the keys in the process, later discovering that the bag contained contraband cigarettes. When he heard someone yelling at him, Robinson fled and dropped the bag and keys. Robinson denied striking Troeng with an iron bar. He also testified that he did not have any gloves with him that day and that, after he was taken into custody, Lawler searched him but did not find any gloves.

During closing arguments, the prosecutor argued that the victim's blood was found on Robinson's clothing, even though the State's expert had concluded only that the blood on Robinson's clothing *could have* come from the victim. Robinson's counsel failed to object to the prosecutor's closing remarks. Robinson's counsel argued in closing that although he was guilty of theft of the cigarettes, the evidence did not support a murder or armed robbery conviction. A jury convicted Robinson of first degree murder, armed robbery, and theft.

## II. Procedural History

Robinson appealed his conviction to the Illinois Appellate Court arguing that: 1) the verdict was not supported by sufficient evidence; 2) he should be granted a new trial because of the State's discovery violation; 3) he was denied due process because of the prosecutor's closing remarks; and 4) he should receive a post-trial hearing on whether he had been denied effective assistance of counsel. The Illinois Appellate Court affirmed Robinson's conviction, rejecting his arguments regarding the sufficiency of the evidence and the State's discovery violation and holding that he had waived his claim regarding the

prosecutor's closing remarks. The state appellate court did remand his appeal for a further post-trial hearing on Robinson's challenge to counsel's performance. The Illinois Supreme Court affirmed the decision of the appellate court, but held that Robinson had waived not only his argument regarding the prosecutor's closing remarks but also that regarding the State's discovery violation.

Upon remand to the circuit court, Robinson moved *pro se* for a new trial, alleging that he was denied effective assistance of counsel because his trial counsel had failed to call two fellow inmates as alibi witnesses and because his trial counsel had conceded Robinson's guilt before the jury to the lessor offense of theft without his consent. Robinson also requested that the state trial court appoint counsel to assist him in pursing his ineffective assistance of counsel claims, but the court ruled that the issues raised by Robinson concerned trial strategy, and so denied Robinson's request for counsel in addition to denying his motion for a new trial. On appeal, Robinson (then represented by counsel) argued only that the trial court erred in refusing to appoint counsel to assist him in his post-trial motion for a new trial, not that his trial counsel had been ineffective. The Illinois Appellate Court ruled that Robinson did not have the right to counsel to assist him in his post-trial motion, and the Illinois Supreme Court denied leave to appeal.

Robinson then filed a state petition for post-conviction review, raising a host of issues that he had not previously raised, which the trial court summarily dismissed as "patently without merit." Robinson appealed only the issue of whether his conviction was obtained through perjured testimony. The appellate court affirmed, but on the ground that

5

the petition, filed more than three years from the date of his conviction, was not timely filed. *See* 725 ILCS 5/122-1(c); *People v. Gunartt*, 327 Ill.App.3d 550, 551-52, 763 N.E.2d 862, 864 (2002). Robinson then filed this *habeas corpus* petition, raising 19 individual claims.[2]

III. Standard of Review

Because Robinson filed his petition after the effective date of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), 28 U.S.C. § 2254, that statute governs the grant of a writ of *habeas corpus*. *Lindh v. Murphy*, 521 U.S. 320, 336, 117 S.Ct. 2059, 138 L.Ed.2d. 481 (1997); *Hardaway v. Young*, 302 F.3d 757, 761 (7th Cir. 2002). Under AEDPA, a petitioner is not entitled to a writ of *habeas corpus* unless the challenged state court decision is either "contrary to" or "an unreasonable application of" clearly established federal law as determined by the Supreme Court. *Williams v. Taylor*, 529 U.S. 362, 404-05, 1200 S.Ct. 1495, 146 L.Ed.2d 389 (2000). A state court's decision is "contrary to" clearly established federal law "if the state court applies a rule that contradicts the governing law set forth" by the Supreme Court. *Williams*, 529 U.S. at 405-06. With respect to the "unreasonable application" prong, the petitioner must demonstrate that the state court identified the correct legal rule, but unreasonably applied it to the facts of the case. *Id.* at 407; *Matheney v. Anderson*, 253 F.3d 1025, 1041 (7th Cir. 2001).

---

[2] Many of Robinson's complaints are repetitive. For example, claims two, nine and sixteen all assert some variation of the claim that Robinson was denied due process because of the prosecutor's misrepresentation of the evidence during closing arguments. Others incorporate a constitutional claim into a claim that the trial court erred in its decision. Claim ten, for instance, alleges that trial counsel was ineffective for conceding Robinson's guilt to theft; claim five incorporates claim ten's allegation and argues that the state trial and appellate courts erred in not finding trial counsel to have been ineffective for conceding his guilt to theft.

6

At the outset, the Court notes that a federal *habeas corpus* petition is not a remedy for errors of state law. *Estelle v. McGuire* 502 U.S. 62, 68, 112 S.Ct. 475, 116 L.Ed.2d 385 (1991). In conducting *habeas* review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States. *Id.; Montgomery v. Meloy*, 90 F.3d 1200, 1206 (7th Cir.1996). Many of Robinson's claims, however, raise issues of state law. For instance, Robinson argues that the state appellate court erred in ruling that his post-conviction petition was not timely filed. Similarly, suggesting that the state trial court erred when it dismissed his post-conviction petition fails to raise a cognizable issue. *See United States ex rel. Willhite v. Walls*, No. 02 C 4404, ___ F.Supp.2d ___, 2003 WL 103006, *6 (Jan 10, 2003). Accordingly, the Court cannot consider those claims.

After discarding Robinson's repetitive and non-cognizable claims, Robinson asserts four cognizable constitutional claims: 1) he was denied due process when the state failed to disclose a witness until the second day of trial; 2) he was denied due process when the prosecutor mischaracterized the evidence during closing arguments; 3) he was denied effective assistance of counsel, for various reasons; 4) he was denied due process because his conviction rests upon perjured testimony.

IV. Analysis

Before proceeding to the merits of Robinson's petition, the Court must first determine whether he has procedurally defaulted any of his claims. Procedural default can occur where the petitioner fails to apprise the state court of his federal constitutional issue in the state courts, *O'Sullivan v. Boerckel*, 526 U.S. 838, 844, 119 S.Ct. 1728, 144 L.Ed.2d 1

(1999), or where the state court rejects a petitioner's claim pursuant to an adequate and independent state procedural ground, *Harris v. Reed*, 489 U.S. 255, 109 S.Ct. 1038, 103 L.Ed.2d 308 (1989). When state courts disagree about the right ground of decision, the ruling of the last state court to articulate a decision governs. *Brooks v. Walls*, 279 F.3d 518, 522 (7th Cir. 2002). A federal court may not grant relief on a procedurally defaulted claim unless the petitioner can establish cause for the default and actual prejudice as a result of the alleged violation of federal law or can demonstrate that failure to consider the claim will result in a fundamental miscarriage of justice. *Coleman v. Thompson*, 501 U.S. 722, 750, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991).

All of Robinson's claims are procedurally defaulted, and he makes no effort to demonstrate that cause and prejudice excuse his default. Robinson procedurally defaulted his claim that the prosecutor mischaracterized the evidence during closing arguments. Although Robinson raised the issue of prosecutorial misconduct on direct appeal, the Illinois Supreme Court found that he had waived the claims because counsel had not objected to the remarks at trial. The Illinois Supreme Court did consider whether plain error warranted reversal on this ground, necessarily requiring the state court to consider the merits, but plain error review does not open up the merits any wider for consideration by the federal court in *habeas corpus* review. *Neal v. Gramley*, 99 F.3d 841, 844 (7th Cir. 1996); *see also Harris v. Reed*, 489 U.S. 255, 264 n. 10 (1989) (holding that state court's ruling on the merits in an alternative holding does not vacate the procedural bar)). Illinois law provides that unless an objection was made at trial to allow the trial court the opportunity to correct

the error, the objection is waived for purposes of the appeal. *People v. Berry*, 609 N.E.2d 900, 904-05 (Ill. App. Ct. 1993); *People v. Hollins*, 482 N.E.2d 1053, 1058 (Ill. App. Ct. 1985). Because the Illinois court relied on a state procedural bar (waiver) in resolving Robinson's prosecutorial misconduct claim, he has procedurally defaulted that claim.

Robinson also procedurally defaulted his claim that the State violated his due process rights by failing to disclose Officer Lawler as a witness until the second day of trial. The Illinois Supreme Court ruled that:

> A defendant cannot request only the most drastic measures, such as either an immediate mistrial or the total exclusion of testimony by a witness, and then argue on appeal that he is entitled to a new trial when these requests are not granted. A one- or two-day continuance may have allowed the defendant sufficient time to investigate the new evidence connecting him to the gloves. Even if this amount of time would not have been sufficient, by requesting a continuance, a record would have been established that a substantial amount of time was both needed and seen as important by the defendant. When the defendant failed to request a continuance and elected to proceed with the trial, the claimed error, if any, was waived.

The Illinois Supreme Court unambiguously held that Robinson waived the issue of whether the state deprived him of due process by withholding the fact that it would present Lawler's testimony to link him to the gloves. Even though the state appellate court did address the issue on the merits (in addition to addressing waiver), it is the holding of the last state court to articulate a decision, in this case the Illinois Supreme Court, that governs. *Brooks v. Walls*, 279 F.3d at 522.

Lastly, Robinson's claims regarding the effectiveness of counsel and the use of perjured testimony are also defaulted. Although Robinson presented his claim regarding the effectiveness of his counsel to the trial court in a post-trial motion, he never presented

9

the merits of this claim on direct appeal to the Illinois Supreme Court. A *habeas* petitioner's failure to pursue a discretionary appeal to the state's highest court, in this case in his direct appeal to the Illinois Supreme Court, constitutes a procedural default barring federal *habeas corpus* review. *Boerckel*, 526 U.S. at 845; *see also Rittenhouse v. Battles*, 263 F.3d 689, 697 (7th Cir. 2001) (noting that *Boerckel* applies retroactively to petitions filed prior to the United States Supreme Court's decision). When Robinson attempted to raise the claims regarding counsel's effectiveness and the use of perjured testimony in his state post-conviction petition, the Illinois Appellate Court refused to address his claims because the petition was not timely filed. Thus, procedural default bars federal review of those claims as well.

IV. Conclusion

All of the cognizable claims in Robinson's *habeas corpus* petition are procedurally defaulted, and his petition is therefore DENIED and this case is dismissed with prejudice.

_____  
Date

_____  
Amy J. St. Eve  
United States District Court

10